Mason, Craig *et al.*, Plaintiffs in Error, *vs.* Callender, Flint, & Co., Defendants in Error.

The only cases in which Courts will carry into effect an agreement to pay a fixed and stipulated amount of damages, are those where the nature of the damages provided against are not regulated by any rule of law with certainty, and cannot be readily ascertained by a jury; and the whole contract must be of this character, because if on the breach of any one covenant contained in it, the damages are ascertainable by a jury with any degree of certainty, the stipulation will be held to be a penalty to cover the damages on such breach, and cannot be changed to meet the others when the damages are uncertain.

Where the stipulation is to pay a greater sum, on default of paying a lesser one, no form of words will change it from a penalty to liquidated damages.

In a note payable "with interest at the rate of three per cent. per month," and containing the further clause "and with interest after maturity, upon principal and interest, at the rate of five per cent. per month until paid,"—*Held*, That the increased rate of interest after maturity, is not a contract for the payment of interest at a "rate agreed upon by the parties," but is an attempt to liquidate the damages for the failure to perform the contract. That the contract of the parties as to interest, does not extend beyond the maturity of the note. That after maturity, the Plaintiff can recover only by way of damages for detaining money after it became due and payable. That the measure of such damages is the legal rate of interest. That the Statute making legal and valid, any rate of interest that the parties may agree upon and specify in a note or other written contract, the rate thus agreed upon to be paid becomes the legal rate for that contract, and is the rate at which the damages should be assessed.

Emmett, Ch. Justice, dissents from a portion of the foregoing, and holds, That seven per centum per annum being the legal rate of interest in this State, that is the measure of damages in all cases, for the detention of money after it becomes due and payable.

This action was commenced in the District Court of Ramsey County, upon a promissory note, of which the following is a copy:

"$151,50. St. Paul, Minn., Nov. 1st, 1857.

Ninety days after date for value received, we promise to pay to the order of H. F. Masterson, one hundred and fifty-one 50–100 dollars, with interest at the rate of three per cent. per month payable, and with interest after maturity upon principal and interest, at the rate of five per cent. per month until paid, payable at the banking house of Irvine, Stone & McCormick."

The Defendant appeared and demanded an "assessment of damages or of the amount which the Plaintiffs are entitled to recover upon their complaint."

Upon the assessment, the Court reported the amount due as follows:

Mason, Craig et al, *v.* Callender, Flint & Co.

| | |
|---|---|
| Amount of note, - - - - - - | $151,50 |
| Interest on same, ninety-three days, at three per cent. per month, - - - - - | 14,06 |
| Interest on principal, and interest at maturity of note, $165,18, from Feb'y 2d, 1858 to date, at five per cent. per month, - - - - | 78,64 |
| | $244,20 |

For which amount judgment was ordered in favor of the Plaintiffs.

The Defendants appealed from the judgment.

The case involves the construction of Chapter 35 of the Revised Statutes of Minnesota, viz:

SEC. 1. Any rate of interest agreed upon by parties in contract, specifying the same in writing, shall be legal and valid.

SEC. 2. When no rate of interest is agreed upon, or specified in a note, or other contract, seven per centum per annum shall be the legal rate.

The following are the points and authorities relied upon by the Appellants:

*First.* The Court below erred in construing Chap. XXXV. of the Revised Statutes, page 155, as applying to and governing stipulations to pay interest after a breach of the contract. This Statute, like all statutes which are in derogation of former laws, must be strictly construed so as to permit so much of the former laws to stand as is possible and give to the new statute some operation.

This statute repeals nothing *expressly;* and repeals by implication are disfavored in law, and will only be extended to cases of necessity—where a different construction would make the new statute a dead letter.

The old law fixing the measure of damages does not conflict with the statute; for it can have some operation, and the old law be allowed to stand.

Another sound rule is, to confine the new statute to such limits as may be necessary to remedy the evil complained of, and which moved the Legislature to enact it.

In this case, the only evil complained of was the restriction

upon contracts for interest of money, imposed by the Usury
Laws. It was only designed to sweep away *all those restric-
tions and their consequences, and nothing more;* the restric-
tions and prohibitions of other laws are unimpaired and in full
force. So that, under this statute, any contract, agreement or
stipulation which prior to its enactment would have been dis-
carded and treated as a nullity, *because of the Usury Laws, and
for no other reason,* is now valid, and will be enforced; but all
such promises, agreements or stipulations which prior to the
enactment of this statute would have been discarded and treated
as nullities *because of other laws,* and for reasons *not founded
upon the Usury Laws* but upon different and independent prin-
ciples—all such provisions and stipulations must be treated
new, as they were then discarded for their conflict with said
other laws.

It is also a sound rule of construction that the words and
phraseology of a statute must be taken in the same, and receive
the same construction as has been given by the courts to the
same words and phraseology in prior statutes *upon the same
subject-matter.* The subject-matter of this Statute is, Con-
tracts for Interest of Money. It contains no new definition of
the words " Contract " and " Interest ;" and, in all prior laws
upon the same subject-matter, such language and words have
been held to have no reference to or bearing upon a promise or
stipulation to pay a certain sum *after maturity, or for the de-
tention of money beyond the time agreed upon.* The words
" *interest* " and " *contract* " were held not to run beyond the
time agreed upon for payment. A promise based upon the
contingency of the breach of the contract was never considered
a part of such contract, within the meaning of the statutes upon
the subject; and the interest given by way of compensation
for the detention of money after it became due, was always
treated as distinct in its nature, and governed by different
principles and law from that before maturity. *Domat on Civil
Law,* 315, 317; 5 *Cowen,* 587 *&c.; Kelly on Usury,* 18 *&c.;
same,* 44 (*marginal,* 65); *same,* 49, (*marginal,* 76); *Comyn on
Usury,* 28, 31; *Bacon's Abr., title* "*Usury," pp.* 268, 283;
*Tomlin's Law Dict., title* "*Interest,"* (*citing an English stat.*);
*Edwards on Bills and Notes,* 709; 5 *Watts and Serg't,* 51; 8

*Wend.* 553; *Act of Congress incorporating U. S. Bank*; 3 *U. S. Stat. at large*, 266 &c. *and decision upon same in U. S. Bank vs. Chapin;* 9 *Wend.* 471; *Lloyd vs. Scott*, 4 *Peters*, 205; *Mourg vs. Bishop*, 5 *Paige*, 98; *Quackenbush vs. Leonard*, 9 *Paige*, 334. Also, *Code of Louisiana, Arts.* 1929–31; *Rev. Statutes of Ohio*, 482; *Rev. Stat. Mich.* 425; *Rev. Stat. Miss.* 370; *Rev. Stat. Iowa*, 148–9; *Rev. Stat. Cala.*, title *"Interest;"* 3 *Iowa (Clark's) Rep.* 246 &c.

In the absence of our statute, this *five per cent.* clause would not be affected by the *law against usury*, but would fall by other laws; and if a *prohibition* to contract for interest above seven per cent. per annum does not apply to *a promise to pay more than that, after due upon default*, how can it be maintained that a *permission* couched in the same terms applies to such performance?

It cannot be maintained that our Statute repeals all laws *besides the Usury Laws* which formerly governed this matter; for, if that were so, the agreement would be good *after judgment, and until paid*, and where the agreement was for *no interest* that agreement would be followed after maturity, and none given.

The fact that the Legislature only permits the recovery of seven per cent. per annum, where money is wrongfully taken or withheld—even in gross instances of wrong—and only allows that rate where the parties have by their agreement left the rate to be implied, is conclusive proof that they had not adopted the notion that money was to be treated in law as a mere commodity, to be wholly unregulated by law. Neither could they have intended to sanction the doctrine that seven per cent. per annum is, as a general rule—though subject to exceptions—below a fair compensation for the detention or use of money. The reason why they give or imply this rate is because, in their judgment, it will be amply just as a general rule; and *their judgment* in this matter is binding upon the Courts.

It is impossible to make our Statute cover the five per cent. clause without going to the length of construing it to authorize the parties to a contract to stipulate for a different rule in their case than the one the law has predicated upon the same state

of facts :—that the parties can bring their case by its facts, within the reason and letter of the rule of the law, and set aside its operation in their case by their own will and agreement. The Court below and the late Supreme Court of the Territory have recognized the logical necessity of such a construction in order to sustain this alleged agreement; both holding that under this Statute the contract controlled the law, and in effect authorized the parties to legislate in their own case. We, nevertheless, respectfully insist that such a doctrine is a dangerous legal heresy, and in conflict with the first principles and even the axioms of government and jurisprudence.

A rule of law is, from the very nature of the case, exclusive and independent of agreements. It could not be a *rule of law* and its operation depend upon the will of the subject.

It is now a well-settled principle of Constitutional Law that the Legislature cannot make the operation of the law contingent upon the consent or will of even the whole body of the people—much less can its operation be contingent upon the mere consent of two individuals. (See the reasoning of Chief-Justice Ruggles, in *Barto vs. Himrod,* 4 *Selden,* 483.)

The rule is this : The operation of a statute may be made to depend upon any condition, contingency, event or fact *other than the agreement or disagreement of the People, or any portion of them, to such operation,* but not upon such assent or dissent.

A rule of law predicated upon a certain state of facts is so predicated because the Legislature, in the exercise of the discretion conferred upon them, have held that such rule is expedient and just, upon the merits of such facts ; and they cannot make others sit in review of their discretion and jurisprudence. The only way that parties can evade the operation of the rule is by making their case different in its facts from that upon which the rule of law is predicated, and their mere adding their agreement to the facts is not an additional *fact,* within the meaning of the law.

In this case, it must be admitted that there is a rule of law predicated upon the facts of a promise to pay, and default of that promise, which rule would govern the case in the absence

of any agreement to the contrary. If so, no agreement to the contrary can be valid, because it would be in effect legislation.

There is still another sound rule for the interpretation of statutes, which is applicable in this case. It is this: If a certain construction will distress the mass of the community and tend to ruin through them the State, such construction will not be given to it;—not that the Court has a right to defeat such result if the Legislature desired to produce it, but the Court will not believe that such was the intention.

The case of agreed interest before maturity is not in conflict with this, because in that case there is no rule of law predicated upon the naked facts; the law, as such, neither gives nor withholds interest before maturity, so that the parties do not in that case agree upon anything different from the law.

The rule giving seven per cent. when *interest* is agreed upon but *no rate*, is merely a rule for the interpretation of contracts. If it were possible to authorize parties to "control the law," "it could not be done by *contract*" until that word had received a new and strange definition. It involves under the present definition a contradiction in terms. The first requisite of a contract is that it shall be subordinate to and in perfect consistency with all the provisions of law. It could never become a contract and conflict with the law, nor set aside the law until it became a contract.

*Second.* The Court below erred in assessing and giving judgment for damages at and for a greater rate and sum than seven per cent. per annum after the maturity of the note.

The promise to pay five per cent. per month after maturity, has no legal effect or operation. It is not in law a contract, because—

1. It lacked *mutuality* or *reciprocity*. The promise was made upon the condition of forbearance for a larger time than the ninety days specified in the note. It was, in fact, an offer to pay that rate of compensation for forbearance indefinitely or at the will of the promisor, until he paid it. It cannot be regarded as an unconditional promise;—and whatever was the condition, it was not accepted by the other party, who, on the contrary, by making it due absolutely in ninety days, expressly withheld his assent, and rejected the terms of the promise. He

refused to be bound to give the additional forbearance—and one could not be bound and the other not, at the same time.   One party said, I will pay you a certain price for a certain thing ; the other replies, *I will not let you have it, for that or any other price—you must not take it.*   That is not the way contracts are made.   *Chitty on Contracts,* 14 ; 1 *Parsons on Contracts,* 399– 400 ; 7 *Watts,* 48 ; *Story on Contracts,* 370 *&c. ; same,* 379, *note, and cases there cited ;* 1 *Barb. Ch. R.* 499 ; 21 *Wend.* 139 ; 23 *Geo.* 124 *&c.;* 6 *Wend.* 103; 1 *Paige,* 434 ;   *Ch. J. Tindal, in Jackson vs. Galloway,* 35 *E. C. & L. Rep.*

It must be remembered, this refusal to assent to further time was carried out by *demand upon the day the note fell due,* so that assent was not afterwards given.   It would have amount- ed to nothing if it had been ;   the case in 21 *Wend.* 139 is con- clusive, that if both parties do not assent, and each become bound *at the first,* an after consent or actual compliance does not make that promise valid which when made was *void.*

2. The Plaintiffs' right to recover rests upon the validity and nature of this promise on the day that it was made.   They sue upon an express promise made on a certain day, and they can take nothing in this action by virtue of any other promise, express or implied ;—and they must show that the promise which they have set up was, at the time made, supported by a sufficient consideration.   If void then for want of it, a subse- quent consideration does not help *it,* but may give them a right upon a subsequent promise founded upon such consider- ation.   The promise to pay five per cent. per month had no consideration to support it, neither executed nor *executory ;* for, in cases of executory consideration, the *execution of them must be promised,* and not left optional.   *Chitty on Contracts,* 37 ; *Parsons on Contracts,* 374 *&c. ;   Story on Contracts,* 435 *&c.; same,* 450, 480 ; *Smith's Law of Contracts,* 170, 193 *&c. and notes ;* 1 *Stephens' N. S.* 240 ; 2 *J. R.* 442 ; 21 *Wend.* 139 ; 23 *Geo. Rep.* 124 *etc. ;* 3 *Clarke's (Iowa) Rep.* 247 *etc. ;* 10 *Vt. Rep.* 251.

*Third.* The Court below erred in not treating the said " after maturity " clause as in the nature of a *mere penalty.*

It comes within all definitions of the word *penalty* by ele- mentary authors, and within the reason of all decisions which

have treated as penalties all promises depending upon and to take effect upon the contingency of the breach of a contract for the payment of money. *Domat on Civil Law*, 185; *Pothies' Law of Obligations*, 278; *Bouv. Law. Dict.*, title *"Penalty;"* 2 *Greenleaf's Evidence*, 260 etc.; *Sedgewick on Measure of Damages*, 233–4, 236–7, 398, 400, 421 etc.; *Comyn on Usury*, 28, 31; 3 *Burrows' Rep.* 1374, (1379); 3 *Atkins*, 520; *Kelly on Usury*, 49; 10 *Bacon's Abr.*, title *"Usury;"* 1 *Hilliard on Mortgages*, 56; *Henry vs. Thompson*, *Minor*, 209 (cited in 2 *U. S. Digest*, 616, 624); 3 *Clarke's* (*Iowa*) *Rep.* 244 etc.; *Lloyd vs. Scott*, 4 *Peters*, 205; 2 *Parsons on Contracts*, 435, and note p. 436; 4 *Mass.* 76; 15 *ib.* 488; 4 *Cranch*, 333; 1 *Mad.* 28; 6 *Mass.* 71; 2 *Ala.* 425; *Walker*, 516; *Rhode Isl. Rep.* 298; 5 *Amer. Digest for* 1851; 5 *Sandf.* 192.

The reason why penalties are not enforced is because they are substitutes by the party for the *legal* measure of damages or penalty in the same case.

This case is clearly within the second, third and fifth classes of penalties as laid down in Greenleaf's "Evidence," cited above.

The fourth principle laid down in "Sedgewick on Damages," page 421, expressly covers not only agreements intended to evade the Usury Laws but also any other law. Is not this stipulation one to evade the law making seven per cent. per annum the measure of legal damages? This must be either a penalty or a case of *agreed or liquidated damages*. The authorities above cited show that it is not the latter. Parties are allowed to fix the measure of damages only in those cases where the law has no measure of damages arising upon the same cases; and the reason why an agreement in regard to damages is enforced, is, because there is no law to ascertain the same. And the fact that the parties, who knew all about their circumstances, placed their estimate upon the breach of the contract, is, in such case, the highest evidence as to the amount of the damages in such case. Hence, such agreements are only regarded in those cases where in their absence the damages would be a mere matter of conjecture or guess-work for the jury.

But, to treat this as a case of agreed damages is impractica-

ble, and the Plaintiffs themselves are not willing to abide by the law in such cases, for it is well-settled that such damages are only given *in lieu of performance.* A man cannot recover damages for non-performance, and enforce the performance also. He who seeks to recover stipulated damages waives performance, and takes them in full satisfaction. 18 *J. R.* 209.

As to the prohibition against parties liquidating damages in those cases where there is a legal measure of damages, see, in addition to the authorities above cited, *Nives vs. Rossman,* 18 *Barbour,* 50.

*Fourth.* The Court below erred in compounding interest, and giving judgment for the same.

It has always been the law to discard all prospective agreements for the compounding of interest—not because of the Usury Laws, for the Courts expressly say that such agreements are not usurious; but they have been held of no validity, for other reasons, upon principles of law distinct from the Usury Laws, and are not affected by the repeal of those laws. 1 *J. Ch. R.* 13; 6 *ib.* 313; *Mowry vs. Bishop,* 5 *Paige,* 98; *Quackbush vs. Leonard,* 9 *Paige,* 334; 11 *Paige,* 228; *Kelly on Usury,* 35; 8 *Blackf.* 158; 4 *Rand.* 405–8; 8 *Mass.* 455; 13 *Metcalf,* 65; 7 *Greenleaf,* 48; 10 *Leigh,* 481; 19 *Maine,* 31, 40; 1 *Aik.* 410; 3 *Wash. C. C.* 401; 9 *Ves.* 271; 17 *Mass.* 417.

The distinction made by the Courts between *prospective* agreements for compounding interest and those which convert interest into principal made *after* it has become due, appear to be upon the assumption of a difference in principle of the two cases. In the one the promise is contingent, and made because the man is not willing to perform, and expects the promise to amount to nothing; in the other, he is willing, and expects to perform.

The reason of the decisions against enforcing agreements for compounding interest at seven per cent. per annum apply with inexpressibly more force, against compound interest at five per cent. per month upon three per cent. per month. The reason of the rule is, that a man's default of payment may be more his misfortune than his fault; and no one should be allowed, by taking advantage of his circumstances, to make exorbitant gain by neglecting to sue, when he might, and the

other party cannot compel him to do so. It is too much of a one-sided affair, to allow a man by neglecting to sue to run his claim up so high that the debtor will never be able to discharge it; perhaps he might run it up to fifty times the original amount, during a financial pressure.

*Fifth.* If the said "after maturity" clause is a part of the note or a valid contract, then the Court erred in giving judgment against either of the Defendants in this action.

If the said clause has any operation at all, the first thing it does is to destroy the negotiability and commercial character of the paper : and the endorser is not liable, because he is only liable upon negotiable paper; and the makers are not liable in this action, because the Plaintiffs show no title to the note that is available except upon negotiable paper—they rely upon the law-merchant alone, which is not applicable to non-negotiable notes. *Chitty on Bills,* 154–5 *etc. ; Story on Prom. Notes,* 23–5, 27; *Edwards on Bills and Notes,* 134, 138, *and note,* 139, 140 *etc.*

The endorser's obligation and liability is only an implied one, raised by the law, and is only contingent. Our statute only authorizes *express agreements.* See *Story on Promissory Notes,* 158–9, *note* 173 ; *Edwards on Bills and Notes,* 286; 12 *Wheaton,* 213, 341; *Chitty on Bills,* 276 *etc.*

The following are the points and authorities relied upon by counsel for Respondents:

*First.* Appellants are liable as the makers and endorsers of a negotiable promissory note. *Chitty on Bills, p.* 136; *Bayley on Bills, Sec.* 1, *Chap.* 1, *and Sec.* 10, *same Chap.; Chap.* 9, *Sec.* 43, *p.* 377; *Rev. Stat. Chap.* 34, *Sec.* 1 *& 3; Semple vs. Conwell,* 29 *Eng. Law & Equity,* 436; 10 *Eng. Law & Equity,* 182; 1 *Bibb,* 247; *Harper,* 397, *Dagett vs. Pratt, cited as* 14 *Mass.,* 177; 15 *Mass.,* 177; 1 *Blackford,* 69 *& 213;* 10 *Texas,* 189; *Stevens vs. Blunt,* 7 *Mass.,* 240; *Byles on Bills, p.* 64, *Sec.* 4 *& 6.*

*Fourth.* Appellants Mason & Craig were properly assessed in the Court below to pay five per cent. per month, because they had *contracted in writing* to pay that rate of interest. *Rev. Stat. p.* 155, *Chap.* 35, *Sec.* 1; *Brewster vs Wakefield,* 1

*Minn.* 352 *and cases cited; also cases ·cited under last point.*

*Third.* Appellant Masterson was properly assessed in the Court below, to pay five per cent. per month, because he is the *indorser* of the contract of Mason & Craig, which is negotiable paper, under the law merchant. *Chitty on Bills, Part* 1, *Chap.* 5, 128 *& 129.*

*Fourth.* Appellants' agreement to pay five per cent. per month after maturity, is not a penalty, nor, strictly speaking, damages, but an agreed *interest* for the use of money. *Bayley on Bills, Chap.* 9, *Sec.* 43, *p.* 377, *cites Daggett vs. Pratt,* 14 or 15 *Mass.,* 177; *Chitty on Bills, Part* 1, *Chap.* 6, *title " interest," p.* 678, *Sec.* 679, *bottom of page, and cases cited; Cameron vs. Smith,* 2 *Barnewall & Alderson's,* 305; 1 *Atkins* 151, *Baylis vs. Ringer,* 7 *Carrington & Payne,* 691; *Byles on Bills, Sec.* 241, *p.* 352.

*Fifth.* The interest due at maturity, and then unpaid, became part of the principal.

*MASTERSON & SIMONS, Counsel for Appellants.

SANBORN, FRENCH & LUND, Counsel for Respondents.

*By the Court.*—FLANDRAU, J.　The case below was upon a note made by defendants for one hundred and fifty-one dollars and fifty cents, payable in ninety days from date " with interest at the rate of three per cent per month payable," and containing this further clause, " and with interest after maturity upon principal and interest at the rate of five per cent per month until paid." The note was drawn payable to the order of one of the defendants, and indorsed by him; it was payable at a certain place, and demanded on the day of its maturity.

The defendants appeared and objected to the assessment of damages as follows :

"To the allowance and assessment of damages by way of interest after maturity of the note for a greater rate and sum

* * NOTE.　There were several cases in the Supreme Court at this term, depending upon the questions presented by the foregoing points, and arising upon similar contracts; and the question being one of very general importance, the Court consented that counsel interested in such other causes might submit their arguments in this cause, the decision of one determining the whole. Whereupon the case was fully and ably argued by Messrs. John M. Gilman and Henry F. Masterson, on behalf of the Appellants, and by Messrs. Theodore French and Henry Hale, on behalf of the Respondents.

than seven per cent per annum.  Because there was no law or valid contract warranting the same,

"To the allowance and assessment of damages, by way of compound interest after maturity of the note because there was no law or valid contract warranting the same."

The defendants made other objections, which the conclusion this Court has arrived at on those stated will make it unnecessary to notice, as their force was dependent upon the failure of above.  The Court below overruled the objections of Defendants and they reserved their exceptions; the plaintiffs had judgment for the note, and the increased rate of interest compounded upon the rate stipulated in the note.

The questions presented here are—

1. Is the clause in the note that the rate of interest shall be increased after maturity, one which can be enforced to its full extent?

2. If not, what rate of damages does the note draw after maturity?

3. Can the clause for compound interest be enforced?

The very extensive interests depending upon the decision of these questions, have led the counsel who argued them, to make a most thorough and elaborate examination into their merits, and have furnished the Court with very learned and able expositions of them from both sides, which have very materially aided in their solution.

The consideration of the first point as to whether an increased rate of interest can be recovered after the maturity of a contract which had a stipulated rate, leads naturally to an examination of the law of interest, which I shall do, but necessarily in a more incomplete manner than I would desire, from the limited resources in authorities I have to draw upon.

Prior to the reign of Henry the Eighth the taking of interest or compensation for the use of money was unlawful in England, and contracts for it were deemed usurious and could not be enforced.  It seems to have been held by the church to have been actually sinful as against the laws of God, and morality, and by the courts to have been unlawful from the political reason that money was only a medium of exchange, and naturally barren and unproductive.  Both of which reasons are

equally fallacious when put to the proper test. It never could have been *malum in se* to take money, because the revealed law allows it as between an Israelite and a stranger, and only prohibits it between the Jews, and the prohibition is by no means confined to money, but usury among the Jews is prohibited on every article that can be loaned. *Deuteronomy*, 23, *Chap*. 19–20 *verses*.

The political reason of the natural barrenness of money making it improper to render it profitable, was untenable and at variance with the common practice of that day, which allowed profit to be made on many other things quite as barren as money. 2 *Blackstone's Com*. 454.

The Statute of 37 Henry 8, Chapter 9, first fixed the interest of money in England at ten per cent. or rather provided that no more than ten pounds in the hundred shall be taken on a loan. The subsequent statutes on the subject of usury in England, and generally in the States of the Union, have been of this negative character, prohibiting the taking of an amount beyond the rate allowed, not declaring what character of demands shall draw interest, or requiring it to be paid, leaving the question of what shall, and what shall not draw interest to the contracting parties, or in other words, making the subject of interest being recoverable or not, dependent upon agreement, and not law, the latter only limiting the amount of the recovery.

Such has been the character of the laws on interest, under which the great mass of the judicial decisions involving such questions have been made.

In considering this question, I desire to establish in the first place exactly what interest is, and when, and during what period of the existence of the contract it attaches to it, and in doing so I will refer to the case of the *Rensselaer Glass Company vs. Reid*, 5 *Cow*. 587, wherein Senator Spencer, in a very able opinion classifies and arranges the cases on the subject of interest under various heads, and attempts to show that wherever interest is allowed, it is only by reason of an agreement between the parties to that effect. So far as this statement is concerned there can be no doubt about its accuracy, but I think that case overlooks one great and material distinction,

which, had it been more accurately observed in the decision of the cases collated by the Senator, he would have had less labor to perform, and had he recognized and adhered to it himself, the whole case would have been more in harmony with the great principle which he first asserts, that the recovery of interest must depend on agreement.

The distinction is, that interest being the creature of contract, is recoverable *strictly as interest,* only during the continuance of the contract, and as provided by its terms, *before breach,* and not after. When the agreement is once violated, the promisee has sustained a wrong for which the law gives him redress by way of damages, and whenever the cases have allowed a Plaintiff to recover any thing more than the principal sum and the interest up to the time of the breach of the contract, it is solely on account of the default of the party failing, and although in many cases the term *interest* has been used indiscriminately to designate the accession to the principal by the terms of the contract, and also the amount allowed in consequence of the breach of the contract, yet the distinction is perfect in law, and the synonymous use of the expression *interest,* with the term *damages* has arisen from the fact that wherever the law regulates the amount of interest, that rate becomes the standard of damages on the breach of all money contracts; the result being the same, it is quite natural that the same name should frequently be employed in both cases. The true rule is as expressed by the Court in 6 *How. U. S.* 154. "Every one who contracts to pay money on a certain day, knows that if he fails to fulfil his contract, he must pay the established rate of interest *as damages* for his non-performance." See also *American Leading Cases, Vol.* 1, *p.* 498; *Sedgwick on the Measure of Damages,* 233–4.

Let us see if the analysis and classification of the cases by Senator Spencer above referred to, would not have been more symmetrical and harmonious, had he recognized the distinction between *damages* and *interest.*

He divides the cases where interest is recoverable into two principal heads; *First,* where the agreement for interest is expressed; *Second,* where it is implied. He then subdivides the second head into five separate ones. The first and fifth of

which alone, sustain the idea that it is the implied agreement which allows the interest; the 2d, 3d and 4th being clearly damages for the breach of a contract and no part of the contract itself. They are as follows in substance:

1st. From custom known to both parties. Here he is evidently treating of the contract before breach.

2d. "Where the principal is to be paid at a specific time, the law has always implied an agreement to make good the loss arising from a default by the payment of interest." He cites Lord Mansfield in *Robinson vs. Bland,* 2 *Burr,* 1086, and adds "This proceeds *entirely on the idea of a default,* and it is a universal maxim, that where interest does not run with the principal, none accrues *until a default is made in payment.*"

It is clear that this is an unwarrantable mingling of the idea of *interest,* which it is admitted is the child of contract, with *damages* which are created by operation of law. Call it damages and it follows legitimately from the breach of the contract; call it interest and you are driven to create a contract by implication to sustain it. When a right or a remedy ranges itself as a logical sequence under one class, it much more properly belongs there, and it will conduce to greater accuracy and system, to continue it there, than to place it in a category which requires the creation of a fiction to gain it admittance.

3d. "Where an account has been liquidated by both parties, and the debt therefore becomes due and payable, it *carries interest* on the same ground of a debt payable at a specific time." The real condition of such an account is, that before liquidation, where the accounts are mutual, or where they are not, the credit is not terminated, the debt is not due until the liquidation takes place, and then it at once becomes the duty of the debtor to pay the balance or amount found due by him, and on default, the law makes him pay damages for the breach of the contract to pay, and was there no legal standard of interest to control the damages, they would have to be ascertained in the same manner as damages in any other case are determined, by proof.

The fourth head is similar in principle to the third and proceeds entirely upon the breach of the contract to pay when the debt is found to be due.

The fifth is confined to cases where an agreement or promise to pay interest, *as interest*, is clearly implied, by the very acts of the parties, as where charges of interest are made and not objected to, or where interest has under like circumstances been allowed by the debtor to other creditors, and the parties act upon the knowledge of the fact. In such cases the contract is clear, and it depends *upon the contract* and not upon its breach that interest is recoverable.

What places it beyond doubt that the Court in the case in 5 *Cowen* confused the term *interest* with the term *damages*, is, that after enumerating the various cases in which interest can be recovered by virtue of a contract expressed or implied, it proceeds to hold that interest may be allowed by a jury in cases of tort " as tresspass or trover for taking chattels, " and after citing a large number of authorities, concludes that " all these cases allow interest where there has been fraud, injustice or delinquency." The incompatibility of this idea with the principle that interest can only be recovered by virtue of a contract expressed or implied is manifest, while it consists strictly with the recovery of damages to be regulated in amount by the standard of legal interest.

I have cited the case in 5 *Cowen*, and commented upon it so much at length, because it contains a full collection of the cases on the subject of interest, and damages which are controlled by the rate of interest, and presents perhaps the best illustration of the extent to which this synonymous use of damages with interest has been indulged in by the Courts. The case in 5 *Cowen* was decided correctly, as were all the cases cited by Senator Spencer, that I have been able to find, and notwithstanding the difficulty complained of, it is, when studied with that difficulty in view, a most valuable auxiliary to an understanding of the question of interest.

Numerous authorities were cited by the counsel in support of their position, that what is recovered after the maturity of a contract is damages and not interest, some of which I have been able to examine since the argument, and some not, but sufficient to establish the principle. *See U. S. Bank vs. Chapin*, 9 *Wend.* 471; 6 *How. U. S.* 154; 4 *Peters*, 205.

The Statute of Minnesota does not in any manner change the
47

nature of interest, but leaves it the creature of contract. *R. S. p.* 155, *Chap.* 35.

The clause in the note in question, "and with interest after maturity upon principal and interest at the rate of five per cent. per month until paid," cannot be regarded as a stipulation to pay *interest* strictly speaking, because the contract into which the parties were entering, precludes the idea under the rule above adopted. The contract or promise, was to pay the principal sum on a specified day, with interest at the rate of three per cent. per month, and the promise so to do, is utterly inconsistent with the position that the parties did not intend to perform, and provided the interest which was to run on a new and different contract to commence when the first terminated, which is essential to its being *interest.* The express contract to pay at the certain day, must destroy the idea of an agreement not to pay, and a new contract with a new rate of interest to commence, the two propositions cannot stand together. The only intelligible interpretation of the clause is, that the party promising to pay meant to do so, and terminate the contract, and this was expected of him by the promise, and both knowing that the promise might not be fulfilled, agreed that on default of payment, the promisor should pay as damages for his breach of contract, the increased rate of five per cent. per month until he paid the note. This in other words was an attempt to liquidate the damages for the failure to perform the contract, and I will examine whether the contract was of the nature in which parties may liquidate their damages in advance.

The case of *Bagley vs. Peddle,* 6 *Sand. Supr. Ct. R.,* 192. contains the rules on the subject of when damages may be liquidated by agreement in advance, and when not, and how such agreements are to be construed, stated in as clear terms as the subject is susceptible of, and as they agree with the conclusions my own researches have produced, I will state them in the language of that case.

"1. Where it is doubtful, on the face of the instrument, whether the sum mentioned was intended to be stipulated damages, or a penalty to cover actual damages, the Courts hold it to be the latter."

"2. On the contrary, where the language used is clear and explicit to that effect, the amount is to be deemed liquidated damages, however extravagant it may appear, unless the instrument be qualified by some of the circumstances hereafter mentioned."

"3. If the instrument provides that a larger sum be paid on the failure of the party to pay a less sum in the manner prescribed, the larger sum is a penalty, *whatever may be the language used in describing it.*"

"4. When the covenant is for the performance of a single act, or several acts, or the abstaining from doing some particular act or acts, which are not measurable by any exact pecuniary standard, and it is agreed that the party covenanting shall pay a stipulated sum as damages for a violation of any such covenants, that sum is to be deemed liquidated damages, and not a penalty."

"5. Where the agreement secures the performance or omission of various acts of the kind mentioned in the last proposition, together with one or more acts in respect of which the damages on a breach of the covenant are certain, or readily ascertained by a jury, and there is a sum stipulated as damages to be paid by each party to the other for a breach of any of the covenants, such sum is held to be a penalty merely."

It appears then that the only cases in which the Courts will carry into effect an agreement to pay a fixed and stipulated amount of damages, are those where the nature of the damages provided against are not regulated by any rule of law with certainty, and cannot be readily ascertained by a jury, and the whole contract must be of this character, because if on the breach of any one covenant contained in it, the damages are ascertainable by a jury with any degree of certainty, the stipulation will be held to be a penalty to cover the damages on such breach, and cannot be changed, to meet the others when the damages are uncertain.

The case of *Bagley vs. Peddie* above quoted from, was of this kind.

The case of *Smith vs. Smith*, 4 *Wend.* 468, was that of one physician selling his business and a lot in a village to another, and covenanting that he would not locate and practice in the

village or within six miles of it, and in case he did so locate or practice, that he would pay the Plaintiff on demand $500 for each month he should so practice, etc., which was held to be of such a nature that the amount'stipulated could be recovered.

*Dakin & Bacon vs. Williams, and Seward,* 17 *Wend.* 446, and reported again in the Court of Errors where it was affirmed, 22 *Wend.* 201, was a case where the Defendants sold to the Plaintiffs, a newspaper and the good will of the concern, and covenanted that they would not start another of the same description in the same village or county, and stipulated the damages on a breach at $3000. It was held that the sum could be recovered.

Many other cases are in the books, but the two cited are quite sufficient to illustrate the principle.

When the damages for the breach are susceptible of proof, the stipulation of a certain amount of damages will be held to be a penalty to provide for the actual damages sustained. On this point see 3 *John Cas.* 297 *with notes "a" and "b,"* where many cases are cited, 5 *Cow.* 144, and very learned note of Reporter at end of case; *Spear vs. Smith,* 1 *Denio,* 464, *per Bronson, C. J.*

" Where there is an agreement to pay a gross sum in the event of the non-performance of a contract, and the case is such that a jury can ascertain, with reasonable certainty, how much damages the injured party has actually sustained by the non-performance, the Courts are strongly inclined to regard the gross sum as a penalty, and not as liquidated damages." *Hoag vs. McGinnis,* 22 *Wend.* 163.

" The distinction between a penalty for securing the performance of the contract, and a stipulation which makes part of the contract itself, may be illustrated by the rule, that if a certain rate of interest is reserved on a mortgage, with an agreement that if it be not paid punctually, the rate shall be increased, *the larger interest is in the nature of a penalty, and may be relieved against in equity.* But, on the other hand, if the larger rate be originally reserved, with an agreement for reduction on punctual payment, the condition for such punctual payment is part of the contract, and relief cannot be given if it is not fulfilled." *Nicholls vs. Maynard,* 3 *Atk.* 519; *Adam's*

Mason, Craig et al. v. Callender, Flint & Co.

*Equity, American Notes, ps.* 108–9, *marginal*; 2 *Story's Equity Jurisprudence, Sec.* 1314–15–16–17; *Bonafous vs. Bylot*, 3 *Burr.* 1374.

The true reason of the interference of equity in this class of cases, is stated by Chancellor Kent, in his opinion in the case of *Skinner vs. Dayton*, 2 *John, Chan. Rep. at page* 535. He says, "The true foundation of the relief is, that when penalties are designed to secure money or damages really incurred, if the party obtains his money or damages *he gets all that he expected or required.*"

The books abound with cases holding this view, and they universally declare the doctrine that where the stipulation is to pay a greater sum, on default of paying a lesser one, *no form of words will change it from a penalty to liquidated damages.*

Such stipulations are by their nature and effect necessarily comminatory, and to allow any arrangement of words to change that effect, would be to permit the parties to override a well fixed rule of law, that the rate of interest shall be the measure of damages.

The case at bar falls distinctly within this latter class; the stipulation is, that if the Defendants fail to pay the principal sum of the note with interest on a certain day, they will pay that sum with increased rate of interest upon principal and interest, or in other words if they fail to pay the lesser sum as agreed they will pay a greater. The greater sum must be held to have been inserted *in terrorum*, and as a penalty. I am unable to find any authority that satisfies me of the propriety of abandoning this long and well established rule.

There is another reason why this stipulation cannot be regarded in the light of liquidated damages; the greater sum agreed to be paid on breach was evidently not intended to be given or received in lieu of performance of the contract, and in full satisfaction for the breach, which is an essential feature in this character of stipulation. *Gray vs. Crosby*, 18 *John*, 219; *Slossen vs. Beadle*, 7 *Johns*, 72.

This point arrived at, leads us to enquire whether the stipulation to compound the interest can be enforced.

Chancellor Walworth in *Quackenbosh vs. Leonard*, 9 *Paige, Ch. R. on page* 345 says, "The principle of not giving effect

to a stipulation for the compounding of future interest upon a debt, does not arise from the usury laws. It is merely adopted as a rule of public policy to prevent an accumulation of compound interest in favor of negligent creditors, who do not collect their interest when it becomes due, which negligence is found, in the end, to be an injury rather than a benefit, to the debtor."

In the case of *The State of Connecticut vs. Jackson*, 1 *John*, *Ch. R.* 13. The Master reported his computation of the amount due upon a bond allowing interest upon interest. The report was sent back for correction. In this case the Chancellor reviews in an able manner the cases on the subject of compound interest from the earliest English decisions in the reign of Charles the Second to the date of the case he was deciding. From which review he concludes that the " decisions show the existence of the general principle, and the exceptions and limitations by which it is attended; and though creditors will be very apt to think with Lord Thurlow, that there is nothing unjust in compelling a debtor who neglects to pay interest when it becomes due, to pay interest upon that interest, yet the wisdom of our laws has ordained otherwise."

He then shows that the Roman law was constant in its condemnation of compound interest, and establishes by reasons of the most unanswerable character,. that to allow such contracts to be enforced, would be productive of the worst possible evils, harsh and oppressive, and tend to inflame the avarice and harden the heart of the creditor.

See *Van Benschooten vs. Lawson*, 6 *Johns*, *Ch. R.* 313, where 1 *John*, *Ch. R.* 13, is cited with approbation. *Toll vs. Hiller*, 11 *Paige*, *Ch. R.* 228 ; *Mowry vs. Bishop*, *et al*, 5 *Paige*, *Ch. R.* 98 *Boyer vs. Elizabeth Pack*, 2 *Denio*, 107, Where compound interest which had been paid under a mistake of fact was allowed to be recovered back. *Hammond's Digest, p.* 331.

There is no limit to the authorities on this point. The principle established is that a contract to pay interest on interest which is not due, is inequitable and will not be enforced, while on the other hand if the interest is due, it may be added to the

principal, and a contract to pay interest on such new principal will be enforced.

The only remaining question is, what shall determine the rate of damages the note is to draw after breach.

The Statute of Minnesota on the subject of interest, is quite peculiar, and must be read with care to be fully understood.

Section one provides, " Any rate of interest agreed upon by parties in contract, specifying the same in writing, shall be legal and valid."

" Sec. 2. When no rate of interest is agreed upon, or specified in a note, or other contract, seven per centum per annum shall be the legal rate."

· It is quite clear that the legislature intended to remove all obstacles from the subject of interest, and leave the parties free to contract for such rate as they should consider their money worth ; and we will in examining this statute be careful to make the distinction between the interest that the parties contract for, and the damages they are entitled to recover on a breach of the contract. The only change then, that this law of 1851 makes, is to remove the restrictions which previously existed on the right to contract for interest, and repeal all laws then in force on the subject. The counsel for the Defendants made a very ingenious argument to show that as the law did not expressly repeal any thing, and would only apply to the subject of *interest*, the old law which fixed the rate of *interest* and by reason of such rate, established the measure of damages on money contracts, must be held to be still in force so far as the question of damages was concerned, and still fix the rate. Without discussing the principle that the *main object* of the old act being the establishment of a rate of interest, and its being used by the Courts, from that fact alone, as a just measure of damages on money contracts, if the *main feature* should be changed, every thing incident to, and consequent upon such main feature, would undergo a corresponding change ; it is quite sufficient to state that the counsel was mistaken in fact; the Revised Statutes of which the interest law is only one chapter of a whole act, contains a provision on page 578, Sec. 1, which repeals expressly all laws in force

either those of the State of Wisconsin or the Territory, with certain express reservations, of which the interest law is not one.

I make these remarks on the supposition that there was some statute on interest in force at the passage of the Revised Statutes, as the counsel has cited one, but I have been unable to find the laws of Wisconsin; however the repealing act which I cite clears the subject of any doubts, and leaves the present interest act as the only statute law in force on the question of interest, at the date of this note.

The two sections which compose this chapter on interest, stand distinct from, and independent of each other, and either could be operative alone. The declaration in the first section, that " any rate of interest agreed upon by parties in contract, specifying the same in writing, shall be legal and valid," is merely declaratory of what would be law if nothing was said on the subject, but imposes the condition that the contract shall be in writing. So we see that the only change it makes in the natural right to contract for interest, is that the contract shall be in writing. Suppose therefore to test the independency of the two sections, that the second one had not been enacted, and the first one stood alone. In this case if a contract should be made which simply contained a stipulation to draw interest, without any rate being specified, it would be like any other contract uncertain in its terms, and would draw no interest, because the law of interest required *the rate* to be expressed in writing, but after breach there would be no difficulty in recovering damages because the current value of the money can always be readily ascertained by proof, and such value would be the measure of damages.

Suppose again that a contract should be made (the first section standing alone,) in which a rate of interest was specified in writing, and a breach be made by the promisor, what would be the measure of damages? The Courts would say the law has permitted the contracting parties to fix a rate of interest to suit themselves, and declared any rate so fixed to be " legal and valid. " In a State where the law fixes the rate of interest, it measures the damages by that rate. In this State there is no legal rate of interest except such as the parties agree

upon, and by similar reasoning that rate should control the measure of damages as being a standard of the value of money adopted by the parties to govern the particular. contract in all its aspects, as thoroughly as a statutory standard would produce the same effect.

If section two stood alone upon the Statute book, parties would have the same right to contract for interest that they now possess, and the only difference in the law would be that the contract would be valid without writing, and if no rate of interest was agreed upon, seven per cent. would be the rate of interest, as well as the measure of damages on a breach.

But if the contract specified a particular rate of interest, say three per cent. per month, and a default should be made in the payment, what would be the measure of damages? Certainly not seven per cent., because we have shown that it is the rate of interest, either statutory, or agreed, which governs the measure of damages after default, and the second section expressly declares that it is inoperative in the matter of interest as concerns any contract that expresses a rate of interest for itself, consequently it must be equally inoperative upon the measure of damages on the breach of such a contract. Its own words separate it entirely from any contract that specifies its own rate of interest, and confine its influence strictly to those cases where "no rate of interest is agreed upon, or specified in a note, or other contract."

Where a contract bears interest, and the rate is agreed upon and specified in writing, it falls within the first section of the interest statute, and must be controlled in all its aspects by that section, and as if there was no other provision of law on the subject, because the second section refers to contracts of another, and different nature, to wit: contracts where "no rate of interest is agreed upon or specified." And on the other hand, where "no rate of interest is agreed upon or specified, in a note or other contract," it falls within the second section and bears seven per centum per annum, and is equally free from any influence whatever from section one, which is confined to a totally different class of instruments. I think there can be very little doubt that the two sections are wholly independent of each other, and that a contract which by its nature

48

falls within the first, cannot be influenced by the last, and *vice versa.*

It is urged that seven per cent. is the general rate of interest established by law, and that the right to contract for a different rate is the exception, and that therefore the general rate is to control the measure of damages; but it seems that the more consistent view of the statute is, that it intended to inaugurate an era of perfect freedom in money dealings, to remove all restraints upon the value of money, and throw the whole subject open to contract; and that the second section was enacted merely to cover those cases of implied contracts to pay interest, and others in which it was expressed, but no rate named, and without which provision the Statute would have lacked symmetry and completeness. The emancipation of money was the aim and object of the Statute, and the seven per cent. clause was to provide for cases where parties failed to avail themselves of the general privilege.

The only effect that a fixed rate of interest by statute, has upon the rate of damages upon the breach of a money contract, is, that it furnishes the Courts with a standard value of money, which standard is arbitrarily applied as the measure of damages in all such cases. Therefore where there is no such fixed rate of interest, nor standard value of money by statute, the Courts must look to some other rule to apply as a measure of damages, and it would seem by far the most reasonable, in harmony with precedent principles, and consistent with the monetary freedom inaugurated by the Statute, to adopt such standard value of money as the contracting parties have by virtue of the Statute fixed upon for themselves, and not one which it was the principal object of the Statute to abolish. The rate of interest *by law* controlled the damages before the Statute; the rate of interest *by contract* under the Statutes, should perform the same office now.

But we are not without the light of judicial interpretation upon this Statute by our own Courts. In the case of *Wakefield vs. Brewster,* 1 *Min. R.* 352, the Supreme Court of the late Territory of Minnesota, gave the Statute the same construction, with the exception that they call the damages which

they allow after maturity of the note, *interest.*  Their views on the Statute, however, are the same as our own.

The fact that their decision has been made for over two years, and stood as an interpretation of the Statute on this point, would be a very strong argument with this Court to hold the same way even if it had entertained doubts of the correctness of the reasoning, which we do not.  Stability in decision is of the utmost importance to the progress and well being of a commercial community, and we will always regard it as a weighty consideration in the determination of any question.

The Court below erred in allowing the Plaintiff to recover the increased rate of interest as damages, and also in allowing the compound interest stipulated in the note.

The true rate of damages should have been the principal sum of the note with interest at three per cent. per month up to the time of default, and damages at the same rate from default to judgment.

The judgment is reversed and the case remanded to the District Court of Ramsey County, for retaxation under the rules above established.

The following dissenting opinion was filed by Emmet, C. J.

I fully concur in the decision of the points involved in this case, in all, save the damages awarded.

That the agreement for interest does not extend beyond the day fixed by the contract for the payment of the principal, is a proposition too well supported by authority to admit of a well founded doubt.  But as the damages awarded for withholding money after it becomes due, have always corresponded with the legal rate of interest, where a legal rate has been established, interest and damages have sometimes, through carelessness or inadvertence, been confounded, and this has created some little confusion.  As often, however, as the question has been presented to any jurist, or writer, whose authority is entitled to respect, the distinction between interest and damages has uniformly been recognized.

We have decided in this case that the contract for interest, under our Statute, does not extend beyond the maturity of the

note, and that the measure of damages which the Plaintiffs are entitled to recover, after maturity, is identical with the legal rate of interest. But a majority of the Court holds also, that as any rate of interest agreed upon by the parties in contract is declared, by statute to be legal and valid, the rate agreed to be paid before maturity becomes the "legal rate" for that contract; and that, therefore, damages should be assessed according to this rate, and not at *seven per cent. per annum*.

From this position I am constrained to dissent, believing, as I do, that if the Plaintiffs can recover for the detention of their money, after the same became payable, by way of damages only, and if the measure of such damages is arbitrarily fixed by construction of law at the legal rate of interest, then the inevitable conclusion is, that *seven per centum per annum* is all that 'can be recovered, whatsoever may have been the rate which the Defendants agreed to pay, either before or after the maturity of the note.

I think the majority has misapprehended the meaning of the term "legal rate of interest," when referred to as the measure of damages for withholding money due, and has misconceived the reasons by which the Courts have been influenced in adopting that as a rule.

The term, as I understand it, cannot properly apply to such a rate as would be legal and valid merely; as any rate is legal which does not exceed the limit fixed by law, but it is used to designate and distinguish from all others that particular rate of interest which the law gives, where no rate is agreed upon by the parties. The one is undoubtedly a legal rate, but the other is *the* legal rate. The one can be recovered only when specified in the contract—the other is given by law, whether specified or not.—The one, depending upon the contract of the parties, is called the conventional, or contract rate, while the other only, being founded upon the Statute alone, can with propriety be termed the legal rate. Our Statute seems to me to have been worded with especial reference to this distinction; for while one section declares that " any rate of interest agreed upon by the parties in contract shall be legal and valid," the next provides that when no rate is agreed upon, or specified in a note, or other contract, *seven per cent. per annum* shall be *the*

Mason, Craig et al. *v.* Callender, Flint & Co.

*legal rate.* When therefore we speak of the legal rate of interest, under our statutes, we mean *seven per cent per annum.* But when speaking of any other rate which parties have agreed upon we refer to the conventional or contract rate, and seldom fail so to designate it by name. In Ohio, for example, the rate of interest, when not otherwise specified, is *six per cent per annum;* although the parties may contract for a rate not exceeding *ten per cent per annum.* Any rate, therefore, from one to *ten per cent. per annum,* may be perfectly legal and valid in Ohio; and yet *six per cent per annum,* to the exclusion of every other rate, is known as the legal rate for that State; and for the simple reason that this is the rate given *by the Statute,* where interest is due and the parties have failed to stipulate as to the rate.

Where usury laws exist, the Courts have confined the damages on money contracts within the limits of the legal rate of interest; because if the rate of damages could exceed the legal rates, parties might recover more, by way of damages, than they could legally have contracted for. And they have adopted the legal rate of interest, as the measure of damages, where such a rate is established, mainly because it furnishes a safe and reliable estimate of the actual average value of money. It has not been arbitrarily selected simply because it was the legal rate, but because, in the opinion of the Courts, the Legislature was competent to judge of the actual value of money— and that when giving interest on contracts or demands in which the rate was not specified it intended to give to the party all that money was actually worth.

Damages are awarded in such cases for the sole purpose of making the party whole, and, unless a positive rule of law intervenes to prevent it, they always bear some relation or proportion to the injury actually sustained. Where, therefore, equal sums of money have been detained after they became payable, by different persons, during the same time, the damage to each is, in reality, precisely the same. Each, in theory, is entitled to recover as damages just what it would have cost him in the market to supply the sum due him during the time it has been detained. In other words, the rate of damages is the current rate of interest. This, I believe, is the practice in

England. There no rate is fixed by law, but one only is named, which cannot be legally exceeded, except in certain specified cases; and the damages there depend upon the actual value of money. They may be less, but can never exceed the limited rate of interest. But wherever the law fixes the rate which money shall bear, when the parties have failed to specify, there I think it will be found that the measure of damages is arbitrarily fixed, by mere operation of law, at the rate of interest thus established. The creditor may, in reality, have suffered a far greater loss, yet he can recover no more. But, on the other hand, he is not required to prove any damage, and can recover the legal rate of interest, as damages, although in point of fact he may have suffered no damage at all.

That the rate of interest specified in the contract, cannot influence the measure of damages, after maturity, is a proposition abundantly sustained by both reason and authority. The decision in the case of the *United States Bank vs. Chapin*, 9 *Wend.* 471, is directly in point. A judgment had been rendered in favor of the bank on two promissory notes which it had discounted, and damages had been assessed thereon, at the rate of *seven per cent per annum* after maturity—that being the legal rate of interest where the action was brought. A motion was afterwards made to set aside this assessment of damages, on the ground that the bank *was limited by its charter to six per cent only*. The motion was denied—the Court holding that, the contract with the bank having been broken, the Defendant was liable to pay the rate of interest fixed by the law of New York from the time the debt became due.

The Supreme Court of Pennsylvania also have held to the same doctrine. In the case of *Ludwick vs. Huntzenger*, 5 *Watts & Sargeant*, 51, the action was upon a bond dated July 1, 1830, conditioned for the payment of $1143 75 on the first day of April, A. D. 1832, with *three per cent* interest from date; and a question arose as to the rate the Plaintiff was entitled to recover after the bond became payable. The Defendant contended that as *three per cent* was the rate agreed to be paid up to the time *fixed* for payment of the bond, the Plaintiff could recover only according to that rate after maturity. But the Court held that " until the bond became due and payable, the

*agreement* of parties regulated the allowance of interest and the rate of it—but after that the law interposed to regulate and allow the rate that should be paid by the debtor on account of his illegal detention of the debt from the Plaintiff. That the agreement of parties in respect to the interest extended no farther than the time fixed for the payment of the principal; after that, it was left to *mere operation of law*, which allows *six per cent.*" See also, *Watkins vs. Morgan* 6 *Carrington & Payne*, 661.

It was urged in argument, as against these authorities, that in States where the Statutes permit parties to contract for a rate of interest beyond the legal rate, the Courts have given the same rate after maturity that the contract bore before; and a case decided in California was brought to our notice. I do not think a single case sufficient to change the rule, or to overcome the authorities cited by the Plaintiffs in Error, even if the decision went to the extent claimed for it. I think it will be found, however, that the decision in California is based upon the peculiar statutes of that State, and does not, therefore, conflict with the general current of authority. I have not been able to secure a copy of the California Statutes—but according to the synopsis in *Brown's Collection Laws, page* 213, they expressly authorize parties to stipulate for the payment of any rate of interest due, or to become due, and provide also that the judgments recovered thereon shall conform to and bear the same rates.

It would seem [from this that in rendering judgment the Court could not do otherwise than conform to the rate agreed upon by the parties—and indeed this is clearly intimated in the decision itself. Similar provisions exist in the Statutes of Louisiana, Mississippi, Ohio, Michigan and Iowa; but no decisions like that from California have been cited from either of these States; and it is confidently asserted that not a single decision can be found extending the agreement of the parties as to interest beyond the time fixed for the payment of the debt which cannot be traced to some statutory provision.

Cases arise very frequently in which it would be impossible to apply such a rule to advantage, even when aided by such a statutory provision. Suppose, for instance, that a loan is made

for three months, or three years, at *three per cent per month* for the first month, or year, *two per cent* for the second, and *one per cent.* for the third, or *vice versa*—and suppose that the note given to secure the loan is not paid at maturity, and action is brought thereon; which of the three rates is to constitute the measure of damages which the Court shall award? I must insist that in such a contingency the rule which my learned colleagues have laid down, in the case at bar, would not prove entirely satisfactory.

For centuries it has been the settled policy of all civilized nations to interfere by law for the protection of borrowers against the rapacity of usurers. The history of the jurisprudence of our own and the mother country, records a constant conflict between Legislatures and Courts, and the money lender. Legislation on the subject of usury has ever been followed by subterfuge and evasion, and these in turn have been met and exposed by enlightened judicial decision, until the law had become so well settled that it was almost impossible to raise a question which had not already been adjudicated. But suddenly this whole policy is changed by our Legislature—whether wisely or not is not the subject of enquiry here. It is a rule of construction, however, which we would do well to remember, that when statutes in derogation of the common law are passed, they should be strictly construed. Considerations of public policy, and, indeed, of common prudence, require that this rule should be applied with the utmost strictness to the statutes under consideration. If, therefore, the Statute permits parties to contract for exorbitant rates of interest, the Courts should see to it that the privilege be confined within the strict letter of the law. The latitude allowed to the parties furnishes but an additional reason for greater strictness on the part of the Courts.

But this decision appears to be predicated upon the assumption that whatsoever rate the parties may have in writing agreed upon can be recovered under any circumstances; whereas the object of our Statute seems rather to have been to remove the restriction imposed by the usury laws then existing, and to inaugurate the principle of free trade in money as in other commodities. The effect of the provision, in my opin-

ion, is simply to declare that no contract for interest shall be void merely because it may exceed a given rate, if the rate be specified in writing; but it by no means interferes with the rights of a Court, in the exercise of its chancery powers, to relieve a party from the hardships of any contract which it would be inequitable to enforce.

Before the passage of this Statute the Chancellor was obliged to interfere if the interest exceeded a given rate, although the money loaned might in reality have been worth even more than the rate agreed to be paid. Now, however, he is not trammelled by the Statute. He must determine each case upon its own merits, and relieve against unconscionable contracts only.

The theory of free trade in money has grown out of the known and constant fluctuation in its value. It may be worth at the rate of *five per cent. per month*, for the current month, or even more for a shorter time, and but *one per cent. per month* for the next month, or on long time—depending upon time, the amount borrowed and other circumstances. But to hold, because money may be worth to me *one per cent. per diem*, or even more for ten days, and I have agreed in writing to pay it, that I must continue to pay at that rate for as many months or years, if I am unable to pay before, or the lender has purposely kept it out of my reach in order to obtain this high rate, is utterly to ignore the idea of any change in the value of money from the time the contract was made until judgment is obtained, however long the interval may have been. According to this rule it would make no difference in the damages recovered that money was actually worth but *seven per cent. per annum* and that the creditor would have been able to have obtained it at that rate in the market—I must nevertheless pay at the rate promised, whether it be *seven per cent. per annum* only, or *seven per cent. per day*. And yet damages are supposed to be awarded the creditor as a compensation for the injury which he has sustained by reason of his not having been paid his money at the time it became due. One could readily conceive how, in this manner, a very insignificant sum, borrowed for a few days only, at rates which would not be

49

thought exorbitant for so short a time, might, if purposely kept out of the reach of the debtor, consume a fortune, in spite of every effort to prevent it.

Again, this decision denies the right of parties to stipulate as to the measure of damages which shall be recovered, because the rule of law, as to liquidated damages, does not apply to a money contract. Yet it will be found that, by the rule laid down in this very case, the damages are determined, not by the actual injury sustained, nor the value of money during the time, nor yet by the rate known as the legal rate of interest, but by the stipulation of the parties in regard to the interest. The contract for interest is gravely determined to have ended at the maturity of the note, only to be immediately revived and *adopted* as the measure of damages. There are apparent inconsistencies here which I am unable to reconcile. If we pay such regard to the stipulation of the parties, we recognize their power to control the law, and authorize them, in effect, to determine for themselves what the rate of damages shall be, notwithstanding the damages are arbitrarily fixed by mere operation of law at the legal rate of interest.

Another reason might here be urged against allowing more than *seven per cent. per annum* in this and kindred cases. We have, in accordance with the uniform current of authority, refused to allow the Plaintiffs in this case to recover compound interest, although the contract expressly authorizes the interest to be compounded. The reason always given why interest should not be compounded is because it is inequitable and against public policy to allow an accumulation of interest in favor of negligent creditors who do not collect their interest when it becomes due, which negligence is found in the end to be an injury, rather than a benefit to the debtor, and because equity will permit no one, by taking advantage of the default of another, to make exorbitant gain, especially if, as in this case, the default may be attributable more to the misfortune than the fault of the debtor. But with how much greater force do these reasons apply to this question of damages after maturity of the note. Where money is drawing such exorbitant rates of interest, the creditor could do his debtor no greater

favor than at once to put his demands in the form of a judgment, nor a more serious injury than to delay action thereon for any considerable time. The longer the delay the greater the injury, and the more money is put into the pocket of the creditor. They are very apt to give indulgence under such circumstances. There seems to be something so fascinating in thus kindly accommodating their debtors, that they seldom resist the generous impulse until they find their securities nearly exhausted, and not even then if additional securities are forthcoming.

For these reasons I have felt compelled to withhold my assent to the rule of damages adopted by my learned associates. No measure of damages ought to be adhered to which is not uniform in its application—which gives to A. only *seven per cent. per annum* as damages for detaining a thousand dollars for a year, and to B. *seven per cent. per month* on money detained from him during the identical time that A. was kept out of his money. The one is damaged to the extent of seventy dollars only, while the other is so seriously injured by the non-payment of the same sum that it requires *eight hundred and fifty dollars* to compensate him for the loss he has sustained. There is no equality in such a rule. It is a rule of decision rather than a rule of damages; and I cannot resist giving expression to the hope that, at no distant day, it may be reviewed, and so far modified as to recognize, in common with nearly every citizen of the State, *seven per cent. per annum* as the legal rate of interest, and as the measure of damages for the illegal detention of money after it becomes payable.